IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JONES,

      Plaintiff,

  v.

ADMINISTRATIVE OFFICE OF NORTHERN CALIFORNIA CARPENTERS HEALTH AND WELFARE TRUST FUND,

      Defendant.
                                     /

No. C-05-04530 EDL

**ORDER GRANTING SUMMARY JUDGMENT**

## I.   INTRODUCTION

This matter comes before the Court on appeal from an administrative decision holding that Plaintiff is not entitled to Supplemental Weekly Disability Benefits ("SWDBs") under the terms of a health and welfare benefits plan offered by Defendant, the Northern California Carpenters Health and Welfare Trust Fund ("Trust Fund").  Defendant gave two reasons for its denial of benefits: (1) the claim was not received within 12 months of the onset of Plaintiff's disability as required; and (2) Plaintiff was not eligible through work hours or the "Hour Bank" in each of the 12 months immediately preceding the "First Day of Disability."  Plaintiff contends that the Trust Fund should have extended the time limit for filing the claim, and found him eligible for SWDBs, because he was prevented from filing on time due to mental and physical incapacity.  Defendant moved for summary judgment on Plaintiff's claim, arguing that there is no genuine issue of material fact that Plaintiff does not meet the eligibility or timing requirements.  Upon consideration of the arguments at the hearing and the briefs, including supplemental briefing requested by the Court, the Court now grants summary judgment for the reasons stated below.

**II.    BACKGROUND**

Plaintiff last worked on October 18, 2003, and he has been considered disabled from that point forward. See Price Decl., Ex. B at 8 (Transcript, In the Matter of Appeal of Sidney L. Jones, No. 1-827-127-1, Hearing Panel of the Carpenters Health and Welfare Trust Fund for California (Sept. 1, 2005) ("Appeal Tr."), at 8:20-23 (Benefits Manager Fairles states "The date of disability was October 18 … '03."). When Plaintiff advised the Trust Fund on November 12, 2003 that he had been deemed totally disabled and entitled to Social Security Administration benefits, the Fund generated an application for retirement benefits. See Supp. Price Decl., ¶ 5, Ex. C. On December 15, 2003, Plaintiff again contacted the Trust Fund and requested an application for disability benefits. Supp. Price Decl., Ex. B (Participant Notes). A "Disability Packet" was sent to Plaintiff, including applications for the Disability Extension benefit, the Supplemental Weekly Disability Benefit, and the Future Service Eligibility Credit for the Pension Trust Fund. Id. ¶ 6, Ex. D. Plaintiff submitted a "Certificate of Disability" to the Trust Fund in February 2004, informing the Trust Fund that Plaintiff was disabled and unable to work since November 1, 2003. When the first Certificate of Disability expired in March 2004, Plaintiff renewed the certificate until May 2004, and in May 2004 he again renewed the certificate until July 2004. See Price Decl., Ex. D at 1-4 (Certificate of Disability Forms). At some point in this process, the Trust Fund told Plaintiff that he could not obtain SWDBs until he showed proof that he was receiving state disability benefits. Price Decl., Ex. B (Transcript, In the Matter of Appeal of Sidney L. Jones, No. 1-827-127-1, Hearing Panel of the Carpenters Health and Welfare Trust Fund for California (Sept. 1, 2005) ("Transcript") at 10.

On March 25, 2005, Plaintiff contacted the California Unemployment Insurance Department for the first time to ask about unemployment benefits. Price Decl., Ex. C at 22-23 (Case No. 1578961, California Unemployment Insurance Appeals Board Decision (July 11, 2005)). He was advised to file a State disability insurance claim at that time. Id. On April 8, 2005, Plaintiff completed his disability insurance claim form, asking for a disability outset of February 18, 2004. Id. The claim was denied as untimely filed. Plaintiff appealed that decision to the California Unemployment Insurance Department Appeals Board on April 25, 2005. Id.

On July 11, 2005, an administrative law judge ruled for Plaintiff that his delay in filing for benefits resulted from "excusable neglect because of his lack of understanding of the procedures and his physical and mental condition at the time." Price Decl., Ex. C at 9-10 (Case No. 1578961, California Unemployment Insurance Appeals Board Decision (July 11, 2005)). The judge awarded disability insurance benefits to Plaintiff retroactive to February 18, 2004, which Plaintiff began receiving on July 16, 2005. Price Decl., Ex. C at 5-8 (disability check copies).

Having successfully obtained state disability benefits, Plaintiff applied to the Trust Fund for Supplemental Weekly Disability Benefit Application on July 20, 2005. See Price Decl., Ex C at 18 (SWDB application). On July 22, 2005, the Trust Fund denied Plaintiff's claim on the ground that Plaintiff "did not submit his application within the required filing time limit," that is, within 12 months of the onset of disability. See Price Decl., Ex. C at 3 (Memo from Benefits Manager to Appeals Committee summarizing matter and outcome of initial decision). On July 26, 2005, Plaintiff appealed the decision to the Board of Trustees. In support of his appeal, he wrote a letter to the Trust Fund Appeals Board stating that he "was too sick to apply for disability," and that the delay in receiving his disability benefits from the state caused his delay in applying for his benefit pay for the trust fund. Further, Plaintiff argued that he had filed on time, stating "I did file for my claim at the trust fund and my claim could not be found." Plan Decl., Ex. C at 4 (Ltr. From Plaintiff to The Appeals Process (July 26, 2005)). On September 1, 2005, the hearing panel of the Carpenters Health and Welfare Trust Fund for California considered and denied Plaintiff's appeal. See Price Decl., Ex. B (Transcript). That same day, the appeal was denied. Citing the Plan Rules and Regulations at §§ 7.04.d and 7.04.f, the panel again found that Plaintiff had failed to file his claim within 12 months of the onset of disability. See Price Decl., Ex. C at 2 (Ltr. From Benefits Manager to Plaintiff (Sept. 1, 2005)). Id. In addition, the panel found that "Participant was not eligible through work hours or the hour bank in each of the 12 months immediately preceding the onset of disability." Id.[1]

---

[1] Defendant has used distinct terms interchangeably, injecting confusion. On appeal, Plaintiff's claim for benefits was denied in part because Plaintiff was not eligible under the Plan through work hours or banked hours, and not through a disability extension of eligibility, "in the 12 months preceding the onset of disability." See Price Decl., Ex. C at 2 (Ltr. From Benefits Manager to Plaintiff (Sept. 1,

3

1    Plaintiff, proceeding pro se, challenged the decision on October 17, 2005, in the Alameda
2 County Superior Court, Small Claims Division. See Plaintiff's Claim and Order to Go to Small
3 Claims Court. Defendant removed the action to federal court on November 7, 2005, because
4 Plaintiff's claim arises under Section 502 of ERISA, 29 U.S.C. § 1132(a) (permitting a beneficiary
5 of an ERISA plan to bring a civil action to recover benefits due under the plan).

## II.    THE BENEFIT PLAN

### A.    Discretionary Plan

Plaintiff is covered by the Carpenters Health and Welfare Trust Fund ("Trust Fund"), which provides a benefit plan ("Plan") for eligible union members and dependants. See Price Decl., Ex. A, 1-12; see also Carpenters Health and Welfare Trust Fund for California, Rules and Regulations (Rev. Jan. 2004) (excerpt attached as part of Ex. A to Price Decl., at 13-22). The Trust Fund is an employee benefit plan subject to and pursuant to ERISA. Price Decl., ¶¶ 1-2 (Declaration of Gene Price, Administrator for the Trust Fund). The Trust Fund pays benefits from contributions received from employers in compliance with their collective bargaining agreements. Mem. at 3. Overall responsibility for the operation and maintenance of the Trust Fund rests with the Board of Trustees. Id. The Plan grants the Trustees "discretion to decide all questions about the Plan," including "determination of eligibility and benefit payment amounts." See Bevington Decl., Ex. A (excerpt from introduction to Summary of Benefits and Rules and Regulations for active Participants and Dependents (Sept. 2004) ("Plan Summary")). It also gives the Trustees exclusive authority to interpret the plan, and provides that the Trustees' determination is "final and binding upon all parties." Id.

The Plan is subject to the provisions of the Trust Agreement, Price Decl., Ex. A at 20 (Plan Rules and Regulations at § 10.08), which similarly provides that "[a]ny dispute as to eligibility, type,

---

2005) ("Participant was not eligible through work hours or the hour bank in each of the12 months immediately preceding the onset of disability."); see also Price Decl. at ¶ 10. In point of fact, Plaintiff was eligible through work hours or the hour bank in the months before his disability began, i.e., October 18, 2003. However, Plaintiff was not eligible in this manner in the months before the First Day of Disability, i.e., February 18, 2004, which is what the Plan requires. See Plan Rules and Regulations, § 7.04.d (requiring applicant to be "eligible under the Plan in each of the 12 months preceding the 'First Day of Disability' through work hours or banked hours (but not eligible only as a result of a disability extension of eligibility)"), discussed further below.

United States District Court
For the Northern District of California

4

1  amount or duration of benefit under any written statement or amendment or modification shall be
2  resolved by the Board consistent with the Plan, and the Board's decision of the dispute shall be final
3  and binding upon all the parties. …"  Price Decl., Ex. E at 2-3 (Amended and Restated Trust
4  Agreement Establishing the Carpenters Health and Welfare Trust Fund for California (April 1997) at
5  Art. IX §2).  These terms vest the plan administrator with discretionary authority.  See Sandy v.
6  Reliance Standard Life Ins. Co., 222 F.3d 1202, 1207 (9th Cir. 2000) (language "conferring authority
7  to determine eligibility, to construe the terms of the Plan, or to make final and binding
8  determinations" confers discretionary authority on the administrator); Abatie v. Alta Health & Life
9  Ins. Co., 458 F.3d 955, 963-65 (9th Cir. Aug. 15, 2006) (change in reason for denial of claim is a
10 procedural irregularity which forecloses the opportunity of the plan participant to presenting any
11 response to the new reason).

**B.  Plan Eligibility**

Under the Plan rules and regulations, a union member becomes eligible to participate in the plan each month if he or she has worked the requisite amount of hours during the previous month for employers who contribute to the Trust Fund.  Hours worked in this way (up to a maximum of 600 hours) are credited into an "Hour Bank," from which 100 hours a month are deducted as the cost of Plan participation.  Price Decl., Ex. A; see also Price Decl.,¶9.  In effect, the Plan participant purchases coverage each month using banked hours as currency.  If a participant becomes disabled, he may obtain a Certificate of Disability, signed by a doctor, in order to "extend existing health and welfare eligibility."  Price Decl., Ex. D at 2 (Memo from Benefit Services to Participant re Certificate of Disability).  Plan participants are instructed that "[i]f you become disabled, you should immediately obtain a Certificate of Disability form to be completed by you and your doctor and mailed to the Fund Office for consideration."  Price Decl., Ex. A at 2. When this application is filed within six months of the onset of the disability, a disability extension of eligibility for the Plan may be granted.  This "Disability Extension" allows the participant to continue to be eligible for health care and other Plan benefits, even though the participant is not currently working or contributing to the Hour Bank.  See Price Decl., Ex. A at 2 (Plan Summary at 11).  Hours sufficient to "buy" eligibility under the Plan are added to the disabled participant's Hour Bank, until the Disability

5

Extension period ends. Supp. Price Decl.,¶10. In other words, the participant receives the currency needed to purchase Plan coverage for that month, free of charge. When the Disability Extension period expires, the Plan Participant reverts to using his or her own work hours to sustain eligibility.

### C.     Eligibility for Supplemental Weekly Disability Benefits

In addition to health benefits, the Plan also makes available Supplemental Weekly Disability Benefits ("SWDBs"). These benefits are available if the Plan participant satisfies four prerequisites. See Price Decl., Ex. A at 4 (Plan Summary at 40). The participant must: (1) have become temporarily disabled while eligible under the Plan; (2) be eligible under the Plan in each of the 12 months preceding the "First Day of Disability" through work hours or banked hours, but not eligible only as a result of a disability extension of eligibility; (3) have worked for a contributing employer at least one day in the 30 days before the First Day of Disability; and (4) be receiving either temporary Workers' Compensation or State Disability Insurance Benefits (if available). Id. In addition to these prerequisites, the Plan must "receive[] notice of claim" from the Participant "within 12 months of the onset of Disability." See Price Decl., Ex. A at 5 (Plan Summary at 42); see also Price Decl., Ex. A at 16 (Plan R&Rs at 134).

The terms "First Day of Disability" and "onset of Disability" are not equivalent. The First Day of Disability is defined in Plan § 7.03.d as "the date the Participant began receiving State Disability Insurance Benefits..." Price Decl., Ex. A at 16 (Plan R&Rs at 134, §§ 7.03.d and 7.04.d.). In Plaintiff's case, that date is undisputed: February 18, 2004, the effective date of his State disability benefits. Price Decl., Ex. C at 5-8 (benefit statement with "date issued 07/16/05" and "claim effective date: 02/18/04"). The "onset of Disability" is also undisputed: October 18, 2003. Price Decl., Ex. B (Transcript) at 8. The extended gap between these two dates underlies much of the current dispute.

### III.    STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. P. 56(c ) The moving party bears the initial burden of demonstrating the absence of a genuine issue of

6

1  material fact. Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  However, the moving party has no
2  burden to negate or disprove matters on which the non-moving party will have the burden of proof at
3  trial.  The moving party need only point out to the court that there is an absence of evidence to
4  support the non-moving party's case. Celotex, 477 U.S. at 325.   The burden then shifts to the
5  non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" Id.
6  477 U.S. at 324 (quoting Rule 56(e)).  To carry this burden, the non-moving party must "do more
7  than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec.
8  Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 ( 1986). "The mere existence of a
9  scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could
10 reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252
11 (1986).  Evidence that "is merely colorable, or is not significantly probative," is not sufficient to
12 avoid summary judgment. Anderson, 477 U.S. at 249-250.

13 Summary judgment cannot be granted where a genuine dispute exists as to any material fact.
14 F.R.Civ.P.  56(c).  A "material" fact is one which might affect the outcome of the case under the
15 applicable law. Anderson, 477 U.S. at 248.   A dispute about a material fact is genuine if a
16 reasonable jury could return a verdict for the non- moving party. Id. In deciding a motion for
17 summary judgment, a court must view the evidence in the light most favorable to the non-moving
18 party, and draw all justifiable inferences in its favor. Anderson,  477 U.S. at 255. Moreover,
19 "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences
20 from the facts are jury functions, not those of a judge [when] he is ruling on a motion for summary
21 judgment ." Id.; see also Harris v. Itzhaki, 183 F.3d 1051 (9th Cir. 1999).

22 Courts review the decision of a plan administrator under ERISA based on the administrative
23 record under an abuse of discretion standard where, as here, the plan confers discretionary authority
24 on its administrator.  Courts must, however, weigh procedural irregularities in deciding whether an
25 administrator's decision was an abuse of discretion. Abatie, 458 F.3d at 972.  In such a case, courts
26 allow supplementation of the administrative record if appropriate. See id. at 972-73.

27 > An administrator must provide a plan participant with adequate notice of the reasons for denial, and must provide a "full and fair review" of the participant's claim. When an
28 > administrator tacks on a new reason for denying benefits in a final decision, thereby precluding the plan participant from responding to that rationale for denial at the

7

> administrative level, the administrator violates ERISA's procedures. … Moreover, a review of the reasons provided by the administrator allows for a full and fair review of the denial decision, also required under ERISA. Accordingly, an administrator that adds, in its final decision, a new reason for denial, a maneuver that has the effect of insulating the rationale from review, contravenes the purpose of ERISA. This procedural violation must be weighed by the district court in deciding whether [Defendant] abused its discretion.

Abatie, 458 F.3d at 974 (internal citations omitted).

The Trust Fund here, as in Atabie, added a new reason for denying Plaintiff benefits when it rendered its final decision, thereby denying Plaintiff the opportunity to address the issue prior to its appeal to the District Court. While this procedural irregularity was no so flagrant as to trigger de novo review, in order to cure any potential prejudice and permit a full and fair review of the issue, the Court invited and considered additional briefing and submission of evidence beyond the administrative record.

## III.  DISCUSSION

### A.  Eligibility: First Day of Disability

Eligibility for SWDBs under the Plan is determined by the "First Day of Disability," as defined by the Plan, rather than the onset of a Participant's disability. See Price Decl., Ex. A at 4 (Plan R&Rs at 41 and 134 (§ 7.03)). A Plan Participant is only eligible for supplemental benefits if he is also receiving disability benefits from the State, if available, or workers' compensation. See Price Decl., Ex. A at 4 (Plan Summary at 40). SWDBs accordingly supplement, rather than supplant, State benefits, and cannot be awarded unless and until State benefits are awarded. Plaintiff did not apply for State disability benefits until April 8, 2005, see Price Decl., Ex. C at 22-23, and received benefits retroactively only to February 18, 2004. See Price Decl., Ex. C at 5-8 (benefit statement). Accordingly, February 18, 2005 is the earliest date that Plaintiff could be eligible for SWDBs.

Another requirement for eligibility is that in the 12 months before Plaintiff started receiving State benefits, the participant must have maintained eligibility through the use of hours worked the prior month or banked hours in his Hour Bank. Here, however, Plaintiff maintained his eligibility under the plan through "disability credits" which extended his eligibility from November 2003 through July 2004, without depleting his banked hours. Price Decl., ¶ 9 and Ex. C at 14-16

8

1 (eligibility and hours data). As a result, by the time Plaintiff obtained State benefits in February
2 2004, his eligibility for Plan benefits had been maintained in some of the preceding 12 months only
3 through a Disability Extension.[2]  Therefore, Plaintiff is ineligible for SWDBs under the terms of the
4 Plan.

        **B.**      **Timeliness:  Notice of Claim Within 12 Months of the Onset of Disability**

6         There is no dispute that Plaintiff was seriously ill.  He suffered from ulcerative colitis, was
7 hospitalized repeatedly in February 2004, had surgery to remove part of his colon on March 10 and
8 was in the hospital until March 31, was on bed rest for at least three weeks in April, had a second
9 surgery to remove more of his colon in September 2004, was again hospitalized and then on bed rest.
10 Further, throughout that period, Plaintiff was taking a substantial amount of pain medication, and
11 was suffering from pain and dysfunction due to his illness. Price Decl., Ex. C at 9-10 (Case No.
12 1578961, California Unemployment Insurance Appeals Board Decision (July 11, 2005)).  It is also
13 undisputed that the Trust Fund had actual notice that Plaintiff was disabled.  Plaintiff became
14 disabled in October 2003 and informed the Trust Fund that he was disabled on November 12, 2003.
15 See  Supp. Price Decl., Ex. B (Participant Notes); see also Price Decl., Ex. D (Certificate of
16 Disability noting disability from November 2003 to February 2003).   Plaintiff received retirement
17 benefits.  Supp. Price Decl., 4:8–4:16.  Actual notice does not, however, serve as a Notice of Claim
18 for SWDBs.  Defendant does not treat an application for one benefit as an application for all
19 available benefits.  Supp. Price Decl., ¶7, Ex. A, at 140–41.  Plaintiff's November 2003 application
20 for retirement benefits, or his February 2004 application for a Disability Extension of Eligibility,
21 would therefore not serve as a claim for any other benefit.  See Supp. Mem. at 5:3–5.

22         Plaintiff, in a sworn statement, asserts that he applied for SWDBs at the Trust Fund Office in
23 Fall 2003.  Price Decl., Ex. B (Admin. Appeal Transcript) at 10:4–19; see also Jones Declaration at
24 1:18–19 ("I filed a claim for weekly "benefit pay" at the trust fund office.").  He does not know what
25 happened to that form; he does not have a copy.  Price Decl., Ex. B (Admin. Appeal Transcript) at

---

[2] Defendant for the first time in its supplemental brief raised a third reason for ineligibility: Plaintiff did not meet the requirement that he work for a "contributing employer" in the month prior to his First Day of Disability, February 2004.  The Court will not consider this very belated argument, which in any event was not cited in the original denial or administrative appeal.

9

10:4–19. He admits that his claim was denied because he was not receiving state disability payments at the time. Id.

Defendant disputes that Plaintiff applied for SWDBs prior to July 20, 2005. The supplemental evidence shows that Plaintiff was provided with several benefit forms in a standard packet. See Supp. Price Decl., ¶ 6 and Ex. B (noting Disability package was sent out to Plaintiff). The Plan practice is to make notes on communications with participant each time there is a communication. See Supp. Price Decl., ¶ 3 and Ex. B. The indirect evidence shows Plaintiff was sent all the benefit forms in a standard package. The record of communications indicates that Plaintiff opted to submit some, but not all, of these benefit applications. See Supp. Mem. at 25:16–26:1 (Plan received applications for certain benefits but not for SWDBs); see also Supp. Price Decl., ¶ 5 and Ex. B (Plaintiff applied for release of Annuity Trust Fund and other benefits). It is the Plan's practice to send rejection letters out if a benefit was denied. Supp. Price Decl., ¶ 15; Supp. Mem. at 6:24--7:1. No rejection letter was sent. See id. Defendant therefore argues that Plaintiff failed to apply for SWDBs prior to July 20, 2005, by which time it was too late to obtain benefits.

Even if there is a genuine dispute of fact that Plaintiff submitted a claim for SWDBs on or around November 2003, the earlier date does not change the outcome. As explained above, Plaintiff has not submitted any evidence that would raise a genuine issue of material fact as to his First Day of Disability, which rendered him ineligibile for SWDBs.

### C.     No Abuse of Discretion

Defendant argues that that the plan administrator did not abuse its discretion in denying Plaintiff SWDBs. As discussed above, the Plan rules exclude Plaintiff from eligibility. Plaintiff argues, however, that he should be granted an exception because he was incapacitated, just as the State excused his late application for disability benefits. However, Plaintiff could only prevail on his claim if it is an abuse of discretion <u>not</u> to grant an exception to Plaintiff due to his incapacitation.

Defendant argues that there was no abuse of discretion because the plan does not allow for exceptions, and Defendant must "administer the Plan in accordance with its written provisions and terms as interpreted by the Trustees." Price Decl., Ex. C at 2 (Ltr. From Benefits Manager to

10

Plaintiff (Sept. 1, 2005) (denying Plaintiff's claim on appeal)).  Defendant, unlike the State, reads no exception into the rule, regardless of good cause.  Plaintiff has put forward no evidence to show that the Trust Fund abused its discretion by not granting an exception to the plain language the Plan.  Plaintiff submitted with his papers an unsworn letter hinting that the benefit application process was confusing and that it was unclear that the selection of one benefit (Disability Extension) foreclosed the possibility of others (SWDBs).  This, however, is not evidence, nor does it show an abuse of discretion or a fundamentally flawed Plan.  The evidence shows that Plaintiff did not receive State benefits until February 2004, by which point Plaintiff failed to meet certain of the other prerequisites for eligibility.  Although the Court sympathizes with Plaintiff's predicament, it cannot find an abuse of discretion to apply the rules without exception.  Accordingly, the Court holds that Defendant did not abuse its discretion when finding Plaintiff was ineligible for SWDBs.

## IV. CONCLUSION

Plaintiff has not raised a genuine issue of material fact that the Trust abused its discretion, even weighing the procedural irregularity noted above, either in his initial submissions or in his supplemental briefings.  The Court has been careful in its review because Plaintiff is proceeding pro se; however, the Court is "not obligated to scour the record looking for a factual dispute without assistance from the parties."  Carven v. San Francisco Unified School Dist., 237 F.3d 1026, 1029 (9th Cir. 2001).  Accordingly, the Court grants summary judgment in favor of the Defendant.[3]

**IT IS SO ORDERED.**

Dated:  January 10, 2007

*Elizabeth D. Laporte*

ELIZABETH D. LAPORTE
United States Magistrate Judge

---

[3]On October 30, Defendant objected to Plaintiff's supplemental papers on the ground that Plaintiff did not serve a copy on Defendant.  On October 31, Plaintiff mailed a letter to the Court apologizing for this oversight and stating he had since sent Defendant his "Oath of Declaration," along with an email apologizing.  The Court overrules Defendant's objection.